AUSAs: Andrew K. Chan and Nicholas Chiuchiolo

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **23 MAG 7566** |
| UNITED STATES OF AMERICA | <u>**SEALED COMPLAINT**</u> |
| v. | Violations of 18 U.S.C. §§ 1343, 1344 |
| JOHN ARTHUR HANRATTY, | COUNTY OF OFFENSE:<br>NEW YORK |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

LAUREN COLLINS, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Wire Fraud)

1.      From at least in or about 2017 through at least in or about 2021, in the Southern District of New York and elsewhere, JOHN ARTHUR HANRATTY, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, HANRATTY engaged in scheme to make false statements to a bank ("Victim Bank-1") insured by the Federal Deposit Insurance Corporation (the "FDIC") in order to fraudulently obtain money from HANRATTY's line of credit with Victim Bank-1, and sent and received, and caused others to send and receive, emails and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
### (Bank Fraud)

2.      From at least in or about 2017 through at least in or about 2021, in the Southern District of New York and elsewhere, JOHN ARTHUR HANRATTY, the defendant, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to

wit, HANRATTY engaged in scheme to make false statements to Victim Bank-1 in order to obtain money from HANRATTY's line of credit with Victim Bank-1.

(Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.      I am a Special Agent with the FBI and am currently assigned to a squad that primarily investigates securities fraud and other complex white-collar frauds. I have received training and have participated in investigations of financial crimes, including crimes involving financial institutions. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews I have conducted, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

## OVERVIEW

4.      As detailed below, JOHN ARTHUR HANRATTY, the defendant, was the Founder and Managing Director of Ebury Street Capital, LLC ("Ebury Street Capital"), an investment firm with a portfolio primarily comprised of municipal tax liens. Between in or around 2017 and in or around 2021, HANRATTY participated in a fraudulent scheme to steal money from Victim Bank-1 by drawing down on approximately $20 million in commercial lines of credit that had been extended to Ebury Street Capital. Specifically, as further detailed below, HANRATTY made materially false statements on spreadsheets (known as "borrowing base certificates") submitted by email to Victim Bank-1 summarizing the value of the municipal tax liens that Ebury Street Capital was offering as collateral for its commercial line of credit. As a result of these false statements on Ebury Street Capital's borrowing base certificates, Victim Bank-1 paid Ebury Street Capital large sums of money to which it was not entitled. The false statements on Ebury Street Capital's borrowing base certificates included, among other things: (1) listing large quantities of municipal tax liens on the borrowing base certificates that Ebury Street Capital did not own; and (2) double-counting municipal tax liens by listing the same liens on multiple borrowing base certificates. Additionally, although Ebury Street Capital was contractually required to use money from Victim Bank-1 either to purchase municipal tax liens or for ordinary business expenses, HANRATTY actually used portions of the money obtained from Victim Bank-1 to pay off Ebury Street Capital's investors—who themselves were threatening to sue and who, in fact, sued Ebury Street Capital and HANRATTY after Ebury Street Capital was unable to pay investors who were seeking to pull out their investments from the fund. Ebury Street Capital's commercial line of credit has now been completely exhausted, and Ebury Street Capital owes over $20 million in principal and interest to Victim Bank-1.

## BACKGROUND ON EBURY STREET CAPITAL

5.      Based on my training and experience, my conversations with representatives of Victim Bank-1, my review of publicly available information regarding Ebury Street Capital, and

my personal involvement in this investigation, I have learned the following, in substance and in part, regarding Ebury Street Capital and its commercial line of credit with Victim Bank-1:

      a. Ebury Street Capital is an investment firm that was founded by JOHN ARTHUR HANRATTY, the defendant, in or around 2010. At all relevant times, HANRATTY served as the Managing Director and Principal for Ebury Street Capital, which manages two different funds known as Ebury Fund 1 and Ebury Fund 2. HANRATTY has been an attorney licensed to practice law in the State of New York since in or around 2002 and has previously held legal and compliance positions at well-known investment firms and financial institutions, including serving as the Chief Compliance Officer and General Counsel for a trading broker dealer. HANRATTY resided in Rye, New York until in or around 2019, when he relocated to San Juan, Puerto Rico.

      b. Ebury Street Capital primarily invests in municipal tax liens, which are liens placed on real property by municipal governments for delinquent property taxes and other fees owed by property owners. Municipal governments typically sell municipal tax lien certificates to the highest bidder at public auctions. Investors frequently purchase tax lien certificates because: (1) municipal tax liens earn a high rate of interest (frequently between 10% to 36% annually) until the underlying taxes are repaid (and the lien is "redeemed") by the property owner; and (2) municipal tax liens frequently provide a path for investors to foreclose on the underlying property and potentially gain ownership of the underlying real estate. Within the municipal tax lien investment industry, municipal tax liens are typically valued by: (a) the amount of outstanding taxes or fees owed to the municipality (known as the "face value"); (b) the amount of taxes and fees owed plus all accrued interest required to redeem a property and satisfy the lien (known as the "redemptive value"); or (c) the fair market value of the underlying real estate.

      c. Victim Bank-1 is headquartered in Manhattan and operates a commercial lending business through which it provides loans to various businesses, including investment firms. In or around 2016, HANRATTY approached Victim Bank-1 to apply for a commercial line of credit for Ebury Street Capital. HANRATTY represented to representatives of Victim Bank-1 that the purpose of Ebury Street Capital's commercial line of credit would be for HANRATTY to invest in municipal tax liens earning a high rate of interest—an interest rate that would exceed the interest charged by Victim Bank-1 on the line of credit. HANRATTY claimed to have significant experience in purchasing municipal tax liens and to have been investing in tax liens since 2009.

      d. In or around March 2017, Victim Bank-1 agreed to extend a $10 million commercial line of credit to Ebury Fund 1 and a $5 million commercial line of credit to Ebury Fund 2. In or around October 2018, Victim Bank-1 agreed to expand these commercial lines of credit by an additional $3.5 million. In or around September 2019, Victim Bank-1 agreed to expand these commercial lines of credit by an additional $1.5 million, for a total of $20 million. To memorialize these commercial lines of credit, HANRATTY signed credit agreements on behalf of Ebury Fund 1 and Ebury Fund 2. The credit agreements restricted Ebury Street Capital's use of the funds from the line of credit to the purchase of tax liens and ordinary and necessary business expenses. Prior to obtaining any money from Victim Bank-1, Ebury Street Capital was required to submit a spreadsheet known as a "borrowing base certificate" that summarized the unencumbered municipal tax liens being offered as collateral for the line of credit. The borrowing bases used a formula allowing Ebury Street Capital to borrow a certain percentage (typically between 80% to 90%, depending on the municipality) of the redemptive value of the municipal tax lien. So, for example, if Ebury Street Capital placed new municipal tax liens into a borrowing

base certificate, their potential borrowing ability increased. Similarly, if batches of municipal tax liens were redeemed or sold, then Ebury Street Capital's borrowing base decreased. Because of the importance of the accuracy and truthfulness of these borrowing base spreadsheets, HANRATTY was required to sign each borrowing base certificate and certify as to its accuracy.

e. The total loan balance on Ebury Fund 1's and Ebury Fund 2's lines of credit with Victim Bank-1 generally hovered below approximately $5 million until in or around the Summer of 2018, when Ebury Street Capital began to borrow heavily from the lines of credit with Victim Bank-1. By in or around September 2018, Ebury Street Capital had borrowed approximately $15 million from its lines of credit, and by in or around December 2019, Ebury Street Capital had nearly exhausted the $20 million available through its lines of credit with Victim Bank-1.

f. In or around March 2021, Ebury Street Capital failed to pay off its outstanding loan to Victim Bank-1 by the original maturity date, which was then extended several additional times until in or around November 2021, by which time Ebury Street Capital owed over $18 million in outstanding principal and interest. Since in or around October 2021, Ebury Street Capital has failed to make any principal or interest payments to Victim Bank-1.

## FALSE STATEMENTS IN EBURY STREET CAPITAL'S BORROWING BASE CERTIFICATES

6. As further discussed below, the FBI has identified numerous false statements in Ebury Street Capital's borrowing base certificates that were submitted by JOHN ARTHUR HANRATTY, the defendant, to Victim Bank-1 to obtain additional funds to which Ebury Street Capital was not entitled. These false statements include (1) listing large quantities of municipal tax liens on borrowing base certificates that Ebury Street Capital did not actually own; and (2) double-counting municipal tax liens by listing the same liens on multiple borrowing base certificates. Some examples of these false statements are described below.

7. Based on my review of records from Victim Bank-1, my conversations with representatives of Victim Bank-1, my conversations with the CEO and owner of a brokerage firm for municipal tax liens that did business with Ebury Street Capital ("Broker-1"),[1] and my review of bank records, records obtained from Broker-1, and other records obtained during the course of the investigation, I have learned the following, in substance and in part:

*Ebury Fund 2 - October 15, 2018 Borrowing Base Certificate and*
*January 9, 2020 Borrowing Base Certificate*

a. On or about October 15, 2018, an Ebury Street Capital employee located outside of the United States submitted by email to Victim Bank-1, located in Manhattan, a borrowing base certificate signed by JOHN ARTHUR HANRATTY, the defendant, containing a spreadsheet titled "NJ Additions" with a purported value of approximately $85,000. The spreadsheet contained

---

[1] Based on my review of publicly available court records, I know that in or around February 2021, Ebury Street Capital filed a lawsuit against Broker-1 in the United States District Court for the District of Delaware alleging, among other things, violations of the racketeering laws, fraudulent inducement to contract, breach of contract, and unjust enrichment. Broker-1 has filed counterclaims in the litigation alleging similar claims against Ebury Street Capital.

information regarding approximately 44 tax liens from various municipalities in New Jersey. The "NJ Additions" sheet in the borrowing base certificate contains the name of Broker-1 and contained information typically held by Broker-1 for each of the liens, including a unique identification number for each lien used by Broker-1. Based on my conversations with the CEO of Broker-1, HANRATTY inquired with Broker-1 about purchasing the book of liens described in the "NJ Additions" spreadsheet on behalf of Ebury Street Capital, but the transaction did not occur. Based on this information from Broker-1 and my review of Ebury Street Capital's bank records and internal accounting records, I believe that HANRATTY falsely represented to Victim Bank-1 that Ebury Street Capital owned the tax liens in the "NJ Additions" spreadsheet and offered the liens as collateral.

      b. As a result of the inclusion of the "NJ Additions" spreadsheet in the borrowing base certificate, HANRATTY falsely certified to Victim Bank-1 that the value of Ebury Fund 2's collateral was approximately $4.65 million. Based on this collateral valuation and the previous loan balance of approximately $4.56 million, HANRATTY falsely certified that Ebury Street Capital was entitled to borrow an additional $85,500 from Ebury Fund 2's line of credit.

      c. Based on my review of bank records, I know that on or about October 15, 2018, Victim Bank-1 transferred approximately $75,000 to Ebury Fund 2 in reliance on the false borrowing base certificate. The money was then transferred from Ebury Fund 2 to Ebury Fund 1, shortly after Ebury Fund 1 had disbursed on or about October 11, 2018 approximately $340,000 to two individuals that, based on the names of the individuals and publicly available information, appear to be investors in Ebury Street Capital.

      d. On or about January 9, 2020, Ebury Street Capital submitted to Victim Bank-1 a borrowing base certificate signed by HANRATTY containing a spreadsheet titled "NJ Additions" that contained approximately 44 tax liens from various municipalities in New Jersey. The "NJ Additions" spreadsheet in the borrowing base certificate contains the name of Broker-1 and appears to be nearly identical in all material respects to the "NJ Additions" spreadsheet in the October 15, 2018 borrowing base certificate. In connection with the submission of this borrowing base certificate, HANRATTY wrote in the subject line of the email sent to Victim Bank-1: "Fund 2 – we bought some subs." Based on my training, experience, and participation in this investigation, I believe that "subs" frequently refer to subsequent tax liens that are placed on a particular property for additional years where taxes are owed by a property owner to a municipality. As a result, in this borrowing base certificate, I believe that HANRATTY was representing that Ebury Fund 2 had purchased tax liens for additional years on the same liens that were listed in the "NJ Additions" sheet in the October 15, 2018 borrowing base certificate—a batch of tax liens and subsequent tax liens that Ebury Street Capital did not actually own.

      e. As a result of the inclusion of the "NJ Additions" spreadsheet in the January 9, 2020 borrowing base certificate, HANRATTY falsely certified to Victim Bank-1 that the value of Ebury Fund 2's collateral was approximately $4.85 million. Based on this collateral valuation and the previous loan balance of approximately $4.73 million, HANRATTY falsely certified that Ebury Street Capital was entitled to borrow an additional approximately $132,000 from Ebury Fund 2's line of credit.

      f. Based on my review of bank records, I know that on or about January 10, 2020, Victim Bank-1 transferred approximately $125,000 to Ebury Fund 2 in reliance on the false

borrowing base certificate. Those funds, in turn, were distributed to various Ebury bank accounts, including $10,000 that was quickly transferred through multiple Ebury accounts and then to HANRATTY's American Express account.

*Ebury Fund 1 – November 9, 2018 Borrowing Base Certificate and*
*February 8, 2019 Borrowing Base Certificate*

      g. On or about November 9, 2018, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY containing a spreadsheet titled "FL Additions" that contained approximately 60 tax liens from various municipalities in Florida. The "FL Additions" spreadsheet in the borrowing base certificate did not contain the name of Broker-1, but contained information typically held by Broker-1 for each of the liens, including, for example, a unique identification number for each lien used by Broker-1. Based on my conversations with the CEO of Broker-1, HANRATTY inquired about purchasing the book of liens described in the "FL Additions" spreadsheet on behalf of Ebury Street Capital in or around October 2018, but the transaction did not occur.

      h. Based on my personal involvement in this investigation, I know that an external contractor was hired to conduct an analysis on a random sample of approximately 15 percent of the 60 tax liens listed in the "FL Additions" spreadsheet. Based on this analysis of the publicly-available records for these randomly-selected tax liens, it did not appear that Ebury Street Capital ever became the registered owner of the tax liens in the "FL Additions" spreadsheet.

      i. As a result of the inclusion of the "FL Additions" spreadsheet in the November 9, 2018 borrowing base certificate, HANRATTY falsely certified to Victim Bank-1 that the value of Ebury Fund 1's collateral was approximately $9.55 million. Based on this collateral valuation and the previous loan balance of approximately $9.33 million, HANRATTY falsely certified that Ebury Street Capital was entitled to borrow an additional approximately $220,000 from Ebury Fund 1's line of credit.

      j. Based on my review of bank records, I know that on or about November 9, 2018, Victim Bank-1 transferred approximately $220,000 to Ebury Fund 1 in reliance on the false borrowing base certificate. Later that day, Ebury Fund 1 disbursed approximately $288,000 to an individual who, according to Victim Bank-1 and publicly available information, was a representative of an investor in Ebury Street Capital.

      k. Approximately three months later, on or about February 8, 2019, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY attaching a spreadsheet titled "FL Additions," which appeared to be identical in all material respects to the false "FL Additions" spreadsheet included in the November 9, 2018 borrowing base certificate described above in paragraph 7(g). In other words, HANRATTY on two separate occasions fraudulently offered the same batch of tax liens as collateral to Victim Bank-1. Based on my conversations with the CEO of Broker-1, the analysis by the external contractor described above, and my review of Ebury Street Capital's bank records and internal accounting records, I believe that HANRATTY falsely represented to Victim Bank-1 that Ebury Street Capital owned the batch of liens listed in the "FL Additions" spreadsheet at the time when they were listed in the November 9, 2018 and February 8, 2019 borrowing base certificates.

6

l. As a result of the inclusion of the "FL Additions" spreadsheet in the February 8, 2019 borrowing base certificate, HANRATTY falsely certified to Victim Bank-1 that the value of Ebury Fund 1's collateral was approximately $9 million. Based on this collateral valuation and the previous loan balance of approximately $8.52 million, HANRATTY falsely certified that Ebury Street Capital was entitled to borrow an additional $482,000 from Ebury Fund 1's line of credit.

m. Based on my review of bank records, I know that on or about February 8, 2019, Victim Bank-1 transferred approximately $460,000 to Ebury Fund 1 in reliance on the false borrowing base certificate.

*Ebury Fund 1 – March 21, 2019 Borrowing Base Certificate and*
*May 17, 2019 Borrowing Base Certificate*

n. On or about March 21, 2019, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY containing a spreadsheet titled "NJ Additions #2" that contained approximately 385 tax liens from various municipalities in New Jersey. As a result of the inclusion of this sheet, HANRATTY falsely certified to Victim Bank-1 that there was approximately $2.1 million of available money to be borrowed under Ebury Fund 1's line of credit. Based on my review of bank records, I know that on or about March 22, 2019, Victim Bank-1 transferred approximately $1.675 million to Ebury Fund 1 on or about March 22, 2019.

o. On or about May 17, 2019, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY containing a spreadsheet titled "NJ Additions #3" that contained approximately 344 tax liens from various municipalities in New Jersey. As a result of the inclusion of this sheet, HANRATTY falsely certified to Victim Bank-1 that there was approximately $860,000 of available money to be borrowed under Ebury Fund 1's line of credit. Based on my review of bank records, I know that on or about May 17, 2019: (1) approximately $860,000 was transferred from Victim Bank-1 to Ebury Fund 1; (2) approximately $350,000 was transferred from Ebury Fund 2 to Ebury Fund 1; and (3) approximately $1.2 million was transferred from Ebury Fund 1 to a business entity that, based on publicly available information and according to Victim Bank-1, was an investor in Ebury Street Capital. Based on my review of Ebury Street Capital's internal accounting records, I know that the $1.2 million payment was described in Ebury Street Capital's records as a "Settlement with the investor."

p. Based on my comparison of the "NJ Additions #2" spreadsheet in the March 21, 2019 borrowing base certificate and the "NJ Additions #3" spreadsheet in the May 17, 2019 borrowing base certificate, it appears that approximately 70 percent of the liens in the "NJ Additions #2" spreadsheet reappeared on the "NJ Additions #3" spreadsheet. In other words, it appears that HANRATTY fraudulently obtained money from Victim Bank-1 by double-counting over 200 municipal tax liens.

**MISAPPROPRIATION OF FUNDS FROM VICTIM BANK-1 TO PAY INVESTORS**

8. Based on my review of publicly available court records, I know that in or around January 2019, Ebury Street Capital was sued by a group of investors (the "Plaintiff Investors") in Westchester County Supreme Court, who alleged, in substance and in part, that in or around June

7

2018, the Plaintiff Investors notified Ebury Street Capital of their intent to withdraw their investments in the company. However, as of the time the lawsuit was filed, Ebury Street Capital had not been able to pay the Plaintiff Investors. *See Brinker-Cohen Family Trust et al. v. Ebury Fund I, LP et al.*, No. 50611/2019 (Sup. Ct. Westchester Cnty. Jan. 9. 2019). Based on my conversations with a representative of Victim Bank-1, I know that JOHN ARTHUR HANRATTY, the defendant, did not inform Victim Bank-1 of this lawsuit, in violation of the credit agreements signed by HANRATTY. As further described below, on various dates that Ebury Street Capital submitted borrowing base certificates requesting funds from Victim Bank-1 to purchase municipal tax liens, it appears that Ebury Street Capital instead used the funds to pay investor distributions—in violation of the credit agreements signed by JOHN ARTHUR HANRATTY, the defendant. Based on my review of bank records, Ebury Street Capital's accounting records, and records from Victim Bank-1, I have learned the following, among other things:

    a. On or about November 9, 2018, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY, which resulted in Victim Bank-1 providing approximately $220,000 to Ebury Fund 1 for the purpose of purchasing municipal tax liens and ordinary business expenses. Ebury Street Capital's accounting records do not record any purchases of liens on or about that day; however, the records indicate a transfer of approximately $280,000 as an "Investor withdrew." The records additionally indicate the name of an attorney who serves as a representative for one of the Plaintiff Investors. As a result, it appears that HANRATTY misappropriated funds provided by Victim Bank-1 to pay one of the Plaintiff Investors.

    b. On or about May 17, 2019, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY, which resulted in Victim Bank-1 providing approximately $860,000 to Ebury Fund 1 for the purpose of purchasing municipal tax liens, as described above in ¶ 7(o). Ebury Street Capital's internal accounting records do not include records of any purchases of liens on or about that day; however, the records indicate a transfer of approximately $1.2 million as a "Settlement with the investor." Based on my review of bank records, it appears that this transfer was sent to one of the Plaintiff Investors.

    c. On or about September 13, 2019, Ebury Street Capital submitted by email to Victim Bank-1 a borrowing base certificate signed by HANRATTY, which resulted in Victim Bank-1 providing approximately $850,000 to Ebury Fund 2 for the purpose of purchasing municipal tax liens. Ebury Street Capital's accounting records do not record any purchases of liens on or about that day; however, the records indicate two transfers totaling approximately $750,000 to two individuals ("Investor-1" and "Investor-2"). Based on my conversations with Investor-1, I know that Investor-1 had been seeking to withdraw Investor-1's investments in Ebury Street Capital around the time of this transfer.

    9. Based on my conversations with representatives of Victim Bank-1, Ebury Street Capital and JOHN ARTHUR HANRATTY, the defendant, have not made any principal or interest payments on its commercial lines of credit since in or around October 2021. Ebury Street Capital currently owes Victim Bank-1 over $20 million in outstanding principal and interest.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JOHN ARTHUR HANRATTY, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

                         s/ Lauren Collins /otw
                         Lauren Collins
                         Special Agent
                         Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this ~~14~~ 15th day of December, 2023.

_____
THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York